IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| **Irene Keller,** | ) | Case No.: 2:24-cv-05884-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' RESPONSE TO** |
| | ) | **PLAINTIFF'S MOTION FOR** |
| **Howard Anthony James and SE** | ) | **PROTECTIVE ORDER** |
| **Independent Delivery Services, Inc.,** | ) | |
| | ) | |
| Defendants. | ) | |

  Defendants Howard Anthony James and SE Independent Delivery Services, Inc., by and through undersigned counsel, hereby respond to Plaintiff's Motion for Protective Order (ECF 29). Plaintiff's objections—and accompanying instructions not to answer—at the deposition of non-party Jack Keller were erroneous, and the Motion for Protection Order should be denied. Furthermore, the deposition should be reconvened at Plaintiff's expense, and defense counsel allowed to resume the objected-to line of questioning.

## FACTS

  This case stems from a 2024 automobile collision. Defendant Howard Anthony James was driving a tractor-trailer when he began changing lanes. The stair-step of the tractor grazed the wheel of Plaintiff's Mercedes SUV traveling in the same direction as Mr. James, and Mr. James returned to his lane. The forward-facing camera depicts the minimal interaction, and experts have calculated the force as less than that required of activities of daily living. Plaintiff, for her part, alleges a lifetime of care will be required. The catalyst for this case is depicted below:



As part of their effort to combat Plaintiff's claims, Defendants deposed Plaintiff's husband, Jack Keller, on October 28, 2025. Mid-deposition, Defendants inquired into whether Mr. Keller was part of the Plaintiff's decision to file a lawsuit regarding this 2024 auto accident.

> 25  Q. Are you participating in her decision-
> 1 making in this lawsuit from the 2024 wreck?
> 2 A. We --
> 3 MR. KLAASMEYER: Objection. One
> 4 second. Objection. I think this is bordering on
> 5 areas -- we're getting into the attorney-client
> 6 privileged information.
> 7 So to the extent you can answer that
> 8 question without revealing attorney-client
> 9 privileged communication --

See Jack Keller Dep. 96:25-97:9 (transcript attached hereto as **Exhibit 1**). Following this objection, Defendants inquired as to whether Plaintiff's counsel was also representing Mr. Keller and whether there was a signed representation agreement with Mr. Keller and Plaintiff's counsel.

> 10 MR. HAYES: Well, hold on just a
> 11 second. Are you representing Mr. Jack Keller?
> 12 MR. KLAASMEYER: Yeah. He -- he has a
> 13 claim for loss of consortium. It has not been

>  14 filed, but he has a claim for loss of consortium
>  15 and we represent obviously Mrs. Keller as well.
>  16 MR. HAYES: Well, I certainly
>  17 understand you represent Mrs. Keller. Have you
>  18 signed a -- Mr. Keller, have you signed a
>  19 representation agreement with Morgan & Morgan?
>  20 MR. KLAASMEYER: Hold on. I still -- I
>  21 think that's attorney-client privileged information
>  22 as well.

*Id.* at 97:10-22. Defendants' counsel emphasized that he was not asking for the substance of the agreement, just whether there was a signed agreement; however, Plaintiff's counsel still instructed that Mr. Keller not answer the question.

>  8 MR. HAYES: Well, I mean, I -- I can
>  9 tell you that I have an agreement to represent
>  10 Southeast Independent Delivery Services. That is
>  11 not privileged information that I represent
>  12 Southeast Independent Delivery Services.
>  13 So I'm just asking if there has been
>  14 an agreement signed by Mr. Keller for Morgan &
>  15 Morgan to be his attorney. I'm asking for the --
>  16 if it's been signed. I'm not asking for what it
>  17 says. I'm not asking what color pen he used to
>  18 sign it. I'm just asking if it exists. I don't
>  19 think the existence of it is privileged
>  20 information.
>  21 MR. KLAASMEYER: I -- I -- I disagree
>  22 on that and so I'm going to instruct the witness
>  23 not to answer the question.
>  24 MR. HAYES: Okay.

*Id.* at 98:8-24. Mr. Keller then expressed his intent to follow said instruction from Plaintiff's counsel. *Id.* at 99:1-9. Plaintiff's counsel has since filed a Motion for Protective Order regarding this line of questioning, arguing that this line of questioning invades the attorney-client and spousal privileges. *See* Pl.'s Mot. for Prot. Order, ECF 29, at 3-5.

## LEGAL STANDARD

In South Carolina, attorney-client privilege is "based upon a public policy that the best interest of society is served by promoting a relationship between the attorney and the client

whereby utmost confidence in the continuing secrecy of all confidential disclosures made by the client within the relationship is maintained." *State v. Doster*, 276 S.C. 647, 650-51, 284 S.E.2d 218, 219 (1981). This privilege belongs to the client and survives him unless the privilege is waived. *Id.* (citing *S.C. State Highway Dep't v. Booker*, 260 S.C. 245, 195 S.E. (2d) 615 (1973)). However, "the privilege must be tailored to protect <u>only confidences disclosed within the relationship</u>." *Id.* at 647, 284 S.E.2d at 219 (emphasis added). "Any voluntary disclosure by a client to a third party waives the attorney-client privilege not only as to the specific communication disclosed but also to all communications between the same attorney and the same client on the same subject." *Marshall v. Marshall,* 282 S.C. 534, 538, 320 S.E.2d 44 (1984) (citations omitted).

In *Strickland v. Capital City Mills*, the Supreme Court saw "no reason why the contract between the client and attorney as to the fee to be paid for professional services and the assignment of an interest in a judgment recovered in payment of services rendered should fall within the rule of privileged communications" *Id.* at 21, 54 S.E. at 221. The court believed "this is knowledge which is not communicated by the client to the attorney, but is knowledge of the attorney derived from his own act in creating the fact sought to be disclosed and not from a revelation of any secret of the client." *Id.* at 21, 54 S.E. at 221-22. Further, the court determined:

> The fee contract, whether regarded as made preliminary to the relation of attorney and client, or at the close of such relation in compensation for services rendered, or whether made during the existence of such relation, is really collateral to the professional relation, is not strictly a part of it, and has no bearing upon the merits of the matter, upon which professional aid was invoked. As to such a contract the parties ordinarily stand in adversary relation.

*Id*. at 21, 54 S.E. at 222.

Procedurally, if a motion for protective order is denied, the Court may order that the discovery be had, *see* Rule 26(c)(2), FRCP, and may award the non-movant reasonable fees and expenses, *see* Rule 26(c)(3), FRCP (citing Rule 37(a)(5), FRCP).

# ANALYSIS

I. **Defendants' inquiry about a fee agreement at Mr. Keller's deposition did not seek privileged communications.**

Similar to the fee agreement in *Strickland*, the knowledge of an alleged representation agreement between Mr. Keller and Plaintiff's counsel is "collateral to the professional relation" and not protected from being inquired into by Defendants. Defendants' counsel did not ask for the specifics of the agreement, only whether there was a signed representation agreement in existence.

> 17 understand you represent Mrs. Keller. Have you
> 18 signed a -- Mr. Keller, have you signed a
> 19 representation agreement with Morgan & Morgan?
> 20 MR. KLAASMEYER: Hold on. I still -- I
> 21 think that's attorney-client privileged information
> 22 as well.

J. Keller Dep. 97:17-22. Further, Defendants' counsel clarified that he was not concerned with any further details regarding the representation, just whether an agreement had been signed.

> 13 So I'm just asking if there has been
> 14 an agreement signed by Mr. Keller for Morgan &
> 15 Morgan to be his attorney. I'm asking for the --
> 16 if it's been signed. I'm not asking for what it
> 17 says. I'm not asking what color pen he used to
> 18 sign it. I'm just asking if it exists. I don't
> 19 think the existence of it is privileged
> 20 information.

*Id.* at 98:13-20. This line of questioning was not made in an attempt to circumvent attorney-client privilege but was instead to ascertain *whether* an attorney-client relationship was in place at the time of the deposition. Therefore, Defendants request the Court deny Plaintiff's request to protect Mr. Keller from inquiry regarding the existence of a signed representation agreement.

II. **Defendants' inquiry into whether Mr. Keller's participation with Plaintiff's decision-making regarding this lawsuit was not protected by attorney-client privilege or spousal privilege.**

Plaintiff's counsel also objected to Defendants' inquiry regarding Mr. Keller's participation in Plaintiff's decision-making regarding this lawsuit under the misguided belief that this information was protected by the attorney-client privilege.

```
25  Q. Are you participating in her decision-
1 making in this lawsuit from the 2024 wreck?
2 A. We --
3 MR. KLAASMEYER: Objection. One
4 second. Objection. I think this is bordering on
5 areas -- we're getting into the attorney-client
6 privileged information.
7 So to the extent you can answer that
8 question without revealing attorney-client
9 privileged communication –
10 MR. HAYES: Well, hold on just a
11 second. Are you representing Mr. Jack Keller?
12 MR. KLAASMEYER: Yeah. He -- he has a
13 claim for loss of consortium. It has not been
14 filed, but he has a claim for loss of consortium
15 and we represent obviously Mrs. Keller as well.
16 MR. HAYES: Well, I certainly
17 understand you represent Mrs. Keller. Have you
18 signed a -- Mr. Keller, have you signed a
19 representation agreement with Morgan & Morgan?
```

J. Keller Dep. 96:25-97:18. This objection was the first time Plaintiff's counsel declared the existence of an attorney-client relationship between counsel and Mr. Keller. Plaintiff further argued in her motion for protective order that this questioning also is protected by spousal privilege. Plaintiff's Motion is incorrect on both grounds.

### No Attorney-Client Privilege Exists in this Context

In the absence of a signed contingency fee agreement between Plaintiff's counsel and Mr. Keller, there is no attorney-client relationship, or privileged relationship whatsoever,[1] and so asking Mr. Keller about his non-privileged participation in this litigation is acceptable.[2] *See Marshall*, 282 S.C. at 538, 320 S.E.2d 44. Mr. Keller is the spouse of a personal injury plaintiff, and when he testifies it will be appropriate for Defendants to present his bias to the jury. Mr. Keller testified that he and his wife file tax returns jointly and have joint bank accounts. J. Keller Dep. 54:5-11. Defendants' inquiry into Mr. Keller's observation and participation in this litigation is necessary to further their ability to defend this case by arguing Mr. Keller's bias.

<u>No Spousal Privilege Exists in this Context</u>

As a threshold matter, Defendants observe that the spousal privilege in South Carolina belongs to the testifying spouse, not the spouse seeking to preclude the testimony. *See State v. Copeland*, 321 S.C. 318, 468 S.E.2d 620 (1996). Mr. Keller has not made any claim or motion asserting spousal privilege. Second, the issue of alleged spousal privilege was not raised during the deposition but rather appears for the first time in Plaintiff's Motion. *Compare* Exhibit 1 *with* ECF 29. Third, the statute cited by Plaintiff—in a civil case—protects only *confidential* communications made during the marriage. *See* S.C. Code Ann. § 19-11-30.  Communications made in the presence of others, such as an attorney, would not fall within the spousal privilege.

---

[1] Indeed, a contingency fee arrangement must be in writing. *See* Rule 1.5(c), RPC, Rule 407, SCACR ("A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated.").

[2] Further, as described in Section I, *supra*, Plaintiff's desire to protect even the basic facts of the existence of an attorney-client relationship between Plaintiff's counsel and Mr. Keller prevents Defendants from knowing when the attorney-client relationship was made and whether the privilege between Plaintiff and Plaintiff's counsel was waived by Mr. Keller's participation in decisions if his representation had not been established before the communication occurred.

Finally, it is readily apparent from the transcript that Mr. Keller had no intention of asserting spousal privilege at any point, because 1) he freely discussed communications from the Plaintiff to him regarding this accident and the accident's effect on the Plaintiff and the marital relationship, and 2) he volunteered to preserve his text message thread with his wife. *See* J. Keller Dep. 80:16-81:1, 91. Spousal privilege, to the extent it existed in this case at all, has been waived by Mr. Keller. Plaintiff should not get to "pick and choose" what questions Mr. Keller must answer in this case.

## CONCLUSION

Defendants ask this Court to deny a protective order preventing Defendants from further inquiry into the attorney-client relationship between Plaintiff's counsel and Jack Keller, as the information sought about the fee agreement is not privileged. Furthermore, in the absence of such an agreement, Defendants are entitled to inquire into Mr. Keller's participation in the litigation.[3] Finally, there is no spousal privilege issue present in this case, for the reasons stated above.

Defendants request that the Court order that the deposition of Jack Keller may be reconvened at Plaintiff's expense, and discovery had into the existence (or lack thereof) of a representation agreement and the participation, if any, Mr. Keller has had in this litigation.

*Signature page to follow.*

Respectfully submitted,

---

[3] Or, if an agreement was signed at or after the deposition, Defendants should be entitled in inquire into the pre-representation participation.

**SWEENY, WINGATE & BARROW, P.A.**

s/ Aaron J. Hayes
Mark S. Barrow
Aaron J. Hayes, Fed. I.D. No. 11196
Sweeny, Wingate & Barrow, P.A.
Post Office Box 12129
Columbia, SC  29211
(803) 256-2233

**ATTORNEYS FOR THE DEFENDANTS**

Columbia, South Carolina

November 18, 2025