IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| IRENE KELLER<br><br>         Plaintiff,<br><br>-v-<br><br>HOWARD ANTHONY JAMES and<br>SE INDEPENDENT DELIVERY<br>SERVICES, INC.<br>         Defendants. | C/A No.: 2:24-CV-05884-DCN<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S LOST WAGES CLAIM AND REDUCED EARNING CAPACITY CLAIM** |

Plaintiff hereby provides the following Response to Defendant's Motion for Partial Summary Judgment:

**LEGAL STANDARD**

Summary judgment is governed by Rule 56, Fed. R. Civ. P., which states that "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. *Faircloth v. United States*, 837 F.Supp. 123, 125 (E.D.N.C. 1993). The court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). "[W]hile the question

of whether evidence is sufficient to survive summary judgment is generally a matter of federal procedural law, 'the "expert testimony" rule' may be 'so closely interrelated with the substantive cause of action … that federal courts sitting in diversity cases should apply the state rule in order to fully realize state substantive policy.'" *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litg.*, 227 F. Supp. 3d 452, 468 (D.S.C. 2017) (quoting *Hemingway v. Ochsner Clinic*, 722 F.2d 1220, 1225 (5th Cir. 1984). When state law governs a claim for relief, state law and decisions control the allowable damages. *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 437, 116 S. Ct. 2211, 2224, 135 L. Ed. 2d 659 (1996); A plaintiff can testify to the physical requirements of their job, their physical condition, and their limitations because those areas fall within the range of common experience and observation. *Lucas v. Sara Lee Corp.*, 307 S.C. 495, 500–01, 415 S.E.2d 837, 840 (Ct. App. 1992) Where plaintiff testifies about their ongoing medical problems, the existence of a permanent injury is a question for the jury. *See Vaughn v. City of Anderson*, 300 S.C. 55, 60, 386 S.E.2d 297, 300 (Ct. App. 1989); *Gethers v. Bailey,* 306 S.C. 179, 182, 410 S.E.2d 586, 587 (Ct. App. 1991)

### SPECIFIC MATERIAL FACTS RELEVANT TO MOTION

1. **Lost Wages.**

    a. In January of 2025, Irene Keller underwent back surgery and went on short-term disability for thirteen weeks. *See* **Exhibit A**, Excerpts of Dep. Of Irene Keller, 69:22–70:17; **Exhibit B**, Excerpts of Mercedes' Response to DFs' Subpoena, P. 1-7; **Exhibit C**, Operative Report from Low Country Orthopedics.

    b. Following the thirteen weeks of short-term disability, Irene Keller went on long-term disability for two weeks before returning to work. **Exhibit B**, Excerpts of Mercedes' Response to DFs' Subpoena, P. 1-7.

    c. After consulting with her doctors, Irene Keller resumed long-term disability on July 8, 2025, and was subsequently terminated. *See* **Exhibit D**, Termination Letter from Mercedes; *See* **Exhibit A**, Excerpts of Dep. Of Irene Keller, 72:11-25.

2. **Loss of Earning Capacity**

    a. Irene Keller was employed by Mercedes-Benz as a production manager prior to the Crash and was paid $5,579.64 per pay period. *See* **Exhibit A**, Excerpts of Dep. Of Irene Keller, 71:19-72:3. **Exhibit B**, Excerpts of Mercedes' Response to DFs' Subpoena, Pg. 8.

    b. Irene Keller planned to work at Mercedes-Benz until retirement upon reaching 67 years old. *Id.* at 71:19-72:3.

    c. Irene Keller experienced injuries which resulted in physical limitations and pain due to the Crash. *Id.* at 72:4-10, 189:8-12, and 195:3-24.

    d. Irene Keller made the decision to go on long-term disability because of her physical limitations, pain, and concerns about how her work was impacting her recovery. *Id.*

## ARGUMENT

1. **There is a dispute of material fact as to Keller's lost wages as Plaintiff testified that she missed work due to her injuries, and the documents produced pursuant to Defendants' subpoena to Keller's employer demonstrate missed wages.**

Plaintiff can demonstrate a dispute of material fact regarding Plaintiff's lost wages claim. As Defendants cite in their Motion, in early 2025 Plaintiff underwent back surgery and went on short-term disability for thirteen weeks and long-term disability for two weeks. During this time, she accrued lost wages. While she received short-term disability benefits and did not go without any source of income, Defendants do not get the benefit of sources of recovery wholly independent of themselves. *Johnston v. Aiken Auto Parts*, 311 S.C. 285, 287, 428 S.E.2d 737, 739 (Ct. App.

1993) Based upon the response to Defendants' subpoena from Plaintiff's employer, Irene Keller missed seven full pay periods worth of wages and one partial pay period, totaling $39,057.48 in missed gross pay. **Exhibit B**, Excerpts of Mercedes' Response to DFs' Subpoena, Pg. 8-41. (See gaps in pay stubs summarized here).[1]



Thus, at a bare minimum Plaintiff has established the existence of past lost wages.

In addition, Plaintiff was terminated from her job on July 14, 2025, due to her inability to work as she could before the Crash. *See* **Exhibit D**, Termination Letter from Mercedes. While Plaintiff is still receiving benefits from long-term disability and is not going totally without income, Defendants do not get the benefit of sources of recovery wholly independent of themselves. *Johnston*, 311 S.C. 285, 287 (Ct. App. 1993). Thus, the record shows that Plaintiff continues to suffer lost wages.

2. **There is a dispute of material fact regarding Plaintiff's ability to work, as shown by the testimony, medical records, and other documentary evidence.**

---

[1] There is one pay stub reflecting bonus compensation for past service rendered, but the gaps in pay stubs reflect Plaintiff was not receiving her ordinary biweekly pay during this time.

Plaintiff can demonstrate a dispute of material fact regarding Plaintiff's lost wages claim. Plaintiff testified in her deposition that prior to this crash, her plan was to work until age 67 and then retire. *See* **Exhibit A**, Excerpts of Dep. Of Irene Keller, 71:19-72:3. At her deposition prior to her termination, Plaintiff testified that she was unsure whether she would be able to return to work and that she may be terminated because of her choice to go on long-term disability. *Id.* at 194:11-195:2. Plaintiff further testified that she chose to go on long-term disability due to the pain she was experiencing and difficulties with the commute. *Id.* at 72:4-10, 189:8-12, and 195:3-24. Plaintiff also testified that Dr. Patel advised her continuing to work was going to hamper her recovery. *Id.* at 72:11-73:3. Plaintiff testified that the disability carrier was applying for federal disability benefits on her behalf *Id.* at 83:17-84:6. Finally, Plaintiff testified that her doctors were involved in her approval process for disability. *Id.* at 69:17-70:17. Plaintiff's husband testified that Plaintiff is not working. *See* **Exhibit E**, Excerpts of Dep. Of Jack Keller, 41:13-14. Plaintiff's husband testified that Plaintiff is unable to help with their farm business in the same manner as she could before. *Id.* at 46:20-48:3. Plaintiff's husband also testified about the heavy impact her injuries have had on her physical condition. *Id.* at 99:19-102:11. Both Plaintiff's and her husband's this testimony supports Plaintiff's claim that this Crash and the injuries caused by the Crash have impeded Plaintiff's ability to earn.

Defendants argue that because Plaintiff has not offered a vocational expert, Plaintiff has not established a dispute of material fact as loss of earning capacity. Defendants' offer no authority standing for the proposition that expert testimony is required for the Plaintiff to establish a loss of earning capacity claim. Defendants cite several cases which stand for the proposition that expert testimony is required to establish medical causation in some cases.[2] Medical causation is not at

---

[2] *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab, Litig.* 226 F. Supp. 3d 557, 569–70 (D.S.C. 2017), *aff'd sub nom. In re Lipitor (Atorvastatin Calcuim) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL*

issue in Defendants' motion, and Defendants' have not presented a motion for summary judgment as to proximate cause. Here, Plaintiff's treating doctors testified that Plaintiff has suffered injury and aggravation of pre-existing injury from the Crash to a reasonable degree of medical probability. *See* **Exhibit F**, Excerpts of Dep. of Dr. Patel, 9:7-14, 59:24-60:14; **Exhibit G**, Excerpts of Dep. of Dr. Battista, 25:8-26:5, 29:9-21. Additionally, Defendants' expert Dr. Peelle concedes some injury was caused by this Crash and that it was reasonable and necessary for Plaintiff to get certain treatment. **Exhibit H**, Excerpts of Dep. of Dr. Peelle, Pt.1, 63:10-65:25, 75:3-76:12. As a result of the injuries and aggravations suffered, Plaintiff has experienced pain and hardship while trying to work. It is not beyond the grasp of the jury to determine that pain can result in an inability to work. *Lucas*, 307 S.C. 495, 501 (Ct. App. 1992)("She also knew her physical condition and limitations. Her testimony fell within the range of common experience and observation. *[…]* The jury could assess the credibility of her testimony and the weight to be given to it.") (Citation omitted). In this case, there is direct testimony regarding expert medical causation supporting Plaintiff's injury claims, Plaintiff's ability to work, and documentary evidence of change in wages. Thus, in the absence of any authority **requiring** the sort of evidence Defendant asserts is required, Defendants arguments regarding the evidence speak to the weight of the evidence rather than its absence. Viewing all inferences in the light most favorable to Plaintiff, the Court can conclude with reasonable certainty what Plaintiff was earning before, what Plaintiff is earning now, that

---

*2502*, 892 F.3d 624 (4th Cir. 2018) ("'While the specific language used by courts vary to some degree, all jurisdictions require expert testimony at least where the issues are **medically** complex and outside common knowledge and lay experience.") (Emphasis added)

*Jones v. Am. Cynamid Co.*, 139 F.3d 890 (4th Cir. 1998)("Under South Carolina law, in a tort case 'where a **medical causation issue** is not one within the common knowledge of the layman,' the plaintiff must present '**medical expert testimony**' in order to establish causation.") (Emphasis added)

*Gambrell v. Burleson*, 252 S.C. 98, 107, 165 S.E.2d 622, 626 (1969)("If a plaintiff is injured and several years after the injury he begins to complain of an ailment which he says resulted from the injury several years earlier, **medical opinion testimony** on the issue of causation is rather obviously indispensable to recovery.") (Emphasis added)

Plaintiff was injured, and that Plaintiffs injuries resulted in her inability to perform her role. The Court should thus deny Defendants' motion for summary judgment.

3. **Summary Judgment as to either lost wages or diminished earning capacity is premature since Plaintiff's medical treatment has not reached long term stability.**

Plaintiff filed a motion for new scheduling order on the grounds of the need for further discovery and time for Plaintiff to continue to receive medical treatment. Plaintiff recently completed a spinal cord stimulator trial and is weighing her options with her treating doctors. This developing medical picture directly affects Plaintiff's earning capacity claim, as future treatment may enable her to return to work or may provide further support that Plaintiff is unable to do so.

## CONCLUSION

There is a dispute of material fact as to both lost wages and loss of earning capacity. The Court should decline to enter summary judgment due to the genuine factual disputes regarding both elements of damages.

**MORGAN & MORGAN**

BY *s/ Cooper Klaasmeyer*
Cooper Klaasmeyer
Federal ID: 14272
4401 Belle Oak Dr., 3rd Floor
North Charleston, South Carolina
(843) 973-5348

North Charleston, South Carolina
March 6, 2026

*Attorney for Plaintiff*