IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| IRENE KELLER<br><br>*Plaintiff*,<br><br>-v-<br><br>HOWARD ANTHONY JAMES and SE INDEPENDENT DELIVERY SERVICES, INC.<br><br>*Defendants*. | C/A No.: 2:24-CV-05884-DCN<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' DAUBERT MOTION AS TO PAUL WHITE, MD AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO FUTURE MEDICAL EXPENSES** |

Plaintiff hereby provides the following Response to Defendants' Daubert Motion and Defendant's Motion for Partial Summary Judgment As To Future Medical Expenses:

**LEGAL STANDARD**

Summary judgment is governed by Rule 56, Fed. R. Civ. P., which states that "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. *Faircloth v. United States*, 837 F.Supp. 123, 125 (E.D.N.C. 1993). The court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"[W]hile the question of whether evidence is sufficient to survive summary judgment is generally a matter of federal procedural law, 'the "expert testimony" rule' may be 'so closely interrelated with the substantive cause of action … that federal courts sitting in diversity cases should apply the state rule in order to fully realize state substantive policy.'" *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litg.*, 227 F. Supp. 3d 452, 468 (D.S.C. 2017) (quoting *Hemingway v. Ochsner Clinic*, 722 F.2d 1220, 1225 (5th Cir. 1984). When state law governs a claim for relief, state law and decisions control the allowable damages. *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 437, 116 S. Ct. 2211, 2224, 135 L. Ed. 2d 659 (1996).

Under Rule 702, expert testimony is admissible where it will assist the trier of fact, is based on sufficient facts or data, is the product of reliable principles and methods, and the witness has reliably applied those methods to the facts.

## ARGUMENT

1. ***Daubert* Motion**

Defendants have not lodged a challenge to Dr. White's testimony based upon his qualifications, and thus the only question regards Dr. White's methodology. Dr. White's Life Care Plan is reliable under Rule 702. As stated in the Life Care Plan ("LCP"), Dr. White utilized a peer-reviewed, industry standard methodology in forming his opinions and creating his report. LCP, Dkt. 43-4, Pg. 1 ("This Life Care Plan was generated in accordance with the IARP and ICHCC standards."). In addition, Dr. White reviewed a large volume of Plaintiff's medical records, imaging studies, took a work history, took a past medical history, spoke with the Plaintiff, and collaborated with one of Plaintiff's treating doctors. Courts in the Fourth Circuit have repeatedly accepted similar or lesser methodologies where life care planners had similar or less data available. *Koenig v. Johnson*, No. 2:18-CV-3599-DCN, 2020 WL 2308305, at *12 (D.S.C. May 8, 2020); *Futtrell v. AV Leasing*, LLC, No. 4:23CV118, 2024 WL 4579906, at *6 (E.D. Va. Oct. 25, 2024*); Payne v. Wyeth Pharms., Inc*., No. CIVA 2:08CV119, 2008 WL 5586824, at *3 (E.D. Va. Nov. 17, 2008) (denying *Daubert* motion despite expert's lack of discussion with treating physician). Here, Defendants'

arguments regarding a lack of physical examination and alleged lack of consultation both go to weight of Dr. White's testimony rather than its admissibility.

Defendants further argue that Dr. White's testimony is excludable on the basis that his recommendations differ from those of Plaintiff's treating physicians. The table below compares the opinions:

| Treatment Modality | LCP | Treating Doctor |
|---|---|---|
| Steroid Injections or PRP Injections for Lumbar and Cervical Combined | 1x Per Year for Life | No more than 4 total injections per year<br>**Exhibit A**, Dep. of Dr. Patel, 50:11-51:10 |
| Physical Therapy | 12 Visits Per Year | 8-10 Visits Per Year<br>Dep. of Dr. Patel, 52:2-9 |
| Physician Follow-Up Appointments | 3x Per Year for Life | 3 or 4 Visits Per Year<br>Dep. of Dr. Patel, 52:10-13 |
| Cervical MRI | 1 Every Three Years | 1 Every Five Years<br>Dep. of Dr. Patel, 53:6-14 |
| Lumbar MRI | 1 Every Three Years | 1 Every Three to Five Years*<br>Dep. of Dr. Patel, 53:6-14[1] |
| Lumbar Radiofrequency Ablation | 1 Per Year for Life | Not Recommended Based Upon Prior Outcome<br>Dep. of Dr. Patel, 52:14-53:1 |
| Possible C5-6 ACDF | Referenced but not costed in LCP | "I would say that that's always on the table if the spinal cord stimulator does not offer her reasonable pain relief"<br>Dep. of Battista, 19:5-20:14 |
| Possible L4-5 Laminectomy | Referenced but not costed in LCP | No Recommendation |
| Possible L5-S1 Fusion | No Recommendation | "Again, we tried to evaluate that more recently with an updated MRI and thankfully everything appears to be in reasonable -- reasonably good standing, but it's my opinion that, you know, she will eventually need a lumbar fusion at that level, unfortunately" |

---

[1] Dr. Battista was not asked directly about the need for future imaging. Dr. Patel works in the same practice as Dr. Battista and shared his knowledge of Dr. Battista's customary practice

|  |  | Dep. of Battista, 17:17-18:22 |
|---|---|---|
| Spinal Cord Stimulator Trial | Notes Dr. Patel's referral to Dr. Battista for consult, no recommendation in cost table. | Recommended and Performed |

While Dr. Whites recommendations do differ from Plaintiff's treating doctors, the variance can largely be explained by the development of Plaintiff's treatment. Dr. White's treatment recommendations are largely supported by the treating physicians, have been performed in the past by the treating physicians, or have not been fully costed yet due to the ongoing development of Plaintiff's treatment. While Dr. Battista has not recommended an L4-5 Laminectomy, when asked about the level he pointed out the same etiology noted in Dr. White's report. "I believe that she has an annular herniation at that level, but I don't believe that we ever recommended a surgery at that level that I can recall." *See* **Exhibit B**, Dep. of Battista, 18:23-19:4. Additionally, a radiofrequency ablation (also commonly referred to as an RFA or rhizotomy) was performed at this level. *Id.* at 42:2-9. Thus, Dr. White's recommendation is supported by his medical expertise, his review of the records, and a history of intervention at the level. Thus, Dr. White's recommendation was grounded in the evidence and supported by a reliable methodology. Any difference in recommendations by the various doctors speaks to the weight and credibility of the testimony, not its admissibility.

Should the Court have concerns about any single LCP entry, Plaintiff requests targeted tailoring under Rule 702—not exclusion—while preserving the cost framework and submitting future medicals to the jury.

2.  **Motion for Partial Summary Judgment as Future Medical Expenses**

Even if the Court should find that Dr. White's testimony regarding future care needs is to be excluded wholesale, Defendants' Motion for Partial Summary Judgment should be denied. As laid out above, Plaintiff's treating doctors have recommended a wide range of future care, and Dr. White has offered a report demonstrating the cost of most of the recommendations. Taking the recommendations of the treating doctors in the light most favorable to Plaintiff leads to the conclusion that future medical damages are reasonably certain to occur. Defendants have not asserted any challenge to Dr. White's costing methodology

and thus it should be considered admissible. In addition, Plaintiff's medical bills can be referenced for the past cost of the many of the recommended treatments. Thus, even if Dr. White's future care opinions are excluded, taking all inferences in favor of Plaintiff still allows the Court to determine the cost of Plaintiff's future medical care with reasonable certainty. As there are facts in the record supporting the need for future care, and the reasonable cost of that future care, summary judgment is not appropriate.

**3. Summary Judgment as to Future Medical Expenses is Premature.**

Plaintiff filed a motion for new scheduling order on the grounds of the need for further discovery and time for Plaintiff to continue to receive medical treatment. Plaintiff recently completed a spinal cord stimulator trial and is weighing her options with her treating doctors. This developing medical picture directly affects Plaintiff's claim for future medical expenses and is the source of many of Defendants' asserted problems with Plaintiff's current claim. Additional time will allow for the resolution of these issues on the merits.

## CONCLUSION

The Court should deny Defendants' Daubert motion as to Paul K. White, M.D., CLCP (or, alternatively, tailor any single line-item while allowing the plan) and deny Defendants' motion for partial summary judgment on future medical expenses.

**MORGAN & MORGAN**

BY *s/ Cooper Klaasmeyer*
Cooper Klaasmeyer
Federal ID: 14272
4401 Belle Oak Dr., 3rd Floor
North Charleston, South Carolina
(843) 973-5348
***Attorney for Plaintiff***

North Charleston, South Carolina
March 6, 2026